Filed 12/22/14  P. v. Gonzalez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C075154 |
| Plaintiff and Respondent, | (Super. Ct. No. CM032852) |
| v. | |
| GLORIA ANNA GONZALEZ, | |
| Defendant and Appellant. | |

Defendant Gloria Anna Gonzalez pled guilty to embezzlement, filing a false income tax return, illegally procuring a state-issued income tax return refund, and drafting multiple insufficient funds checks (writing bad checks).  The trial court sentenced defendant to seven years in state prison.  The court imposed the upper term of three years for embezzlement, with a two-year enhancement for loss exceeding $200,000.  The trial court ordered one-third the middle term (eight months each) for the three remaining counts.  The trial court found the crimes and objectives to be independent of one another and ordered the sentence for each count to run consecutively.

1

On appeal, defendant contends the trial court erred by imposing the upper term for embezzlement because the court: (1) considered elements of embezzlement as aggravating factors; and (2) ignored additional mitigating factors. Defendant also contends her sentence for writing bad checks must be stayed pursuant to Penal Code[1] section 654 because the only objective in writing those checks and in the embezzlement was to steal money from the City of Gridley (the city). We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2010, Melanee Montero located a check in her name from her employer, the city, that was not issued to her, and that was sent to a post office box that was not hers. She reported the check to the Gridley Police Department. Officer Scott Olsgard determined the check was deposited into defendant's bank account and defendant rented the post office box listed on the check.

Defendant worked as a senior accountant technician for the city. Her duties included payroll, sending and receiving bank account statements by the city, and signing checks to certain vendors. Karin Helvey, the finance director for the city, instituted an internal audit of the city's funds. She found 22 checks fraudulently reissued or voided and then later deposited into defendant's personal account.

On September 14, 2010, officers from the Gridley Police Department executed a search warrant at defendant's home. The officers seized several computers, checks written to and from the city, and bank statements. Officers found a paper spreadsheet containing the names of numerous city employees, social security numbers, and personal account numbers. On defendant's computer, police found defendant's tax returns for 2008 and 2009 and a bank statement for the city. According to defendant's tax returns, she filed fraudulent income tax returns and illegally obtained refunds for tax years 2008

---

[1]     All further section references are to the Penal Code unless otherwise indicated.

2

and 2009. A spreadsheet on defendant's computer listed the bad checks and tracked money transfers with color-coding and abbreviations.

Over the three-year period under investigation, the city's loss totaled $373,873.10.

On July 22, 2013, defendant pled guilty to embezzlement, filing a false income tax return, illegally procuring a state-issued income tax return refund, and writing bad checks. Defendant admitted two enhancements for participation in a theft exceeding $100,000 and taking property exceeding $200,000.

On October 25, 2013, the trial court sentenced defendant to seven years in state prison. The trial court imposed an aggravated three-year term for the embezzlement count because it found "on balance, that the circumstances in aggravation outweigh[ed] the circumstances in mitigation." The trial court found: (1) the crime was committed in a manner that indicated planning, sophistication, and professionalism; (2) the crime involved the taking of great monetary value; (3) defendant took advantage of a position of trust or confidence; and (4) defendant involved her children in her embezzlement scheme.

At sentencing, the court noted as follows: "[D]efendant involved her children, one of whom was a teenager when she recruited her in her embezzlement scheme. Her two daughters are now convicted felons; her son is now a convicted felon due to her involvement of them in her crimes." When her crimes were discovered, defendant had access to all of the city's accounts, financial records, and financial systems. She produced the city's checks; she had access to all of the employees' accounts and passwords. Defendant's coworker, Montero, who was also a relative by marriage, wrote to the court stating that defendant had used her name to embezzle approximately $58,000 by forging her signature on several checks. Montero suffered "a lot of anguish over the violation of her trust and knowing that . . . defendant . . . had access to all of her financial and personal security information."

3

In mitigation, the trial court recognized defendant had no prior criminal history and had expressed remorse in her letter to the court.

In addition to the upper term of three years for embezzlement, the court imposed a two-year enhancement for loss exceeding $200,000. The trial court then imposed the upper term of three years for each of the three remaining counts, but ordered one-third the middle term on each count. The trial court found the crimes and objectives to be independent of one another and ordered the sentences for each count to run consecutively.

## DISCUSSION

### I

*The Trial Court Did Not Abuse Its Discretion In*

*Imposing The Upper Term For Embezzlement*

Defendant contends the trial court abused its discretion by imposing the upper term for embezzlement because the court: (1) considered elements of embezzlement as aggravating factors; and (2) ignored additional mitigating factors. We disagree.

When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term rests within the sound discretion of the court. (§ 1170, subd. (b).) In exercising its discretion to impose judgment, the court may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. (Cal. Rules of Court, rule 4.420(b).)

Circumstances in aggravation may justify imposition of the upper of three possible prison terms. (§ 1170, subd. (b).) Aggravating circumstances are facts that make the offense distinctively worse than the ordinary, including those relating to the crime and relating to the defendant. (Cal. Rules of Court, rule 4.421; *People v. Black* (2007) 41 Cal.4th 799, 817.) The court is not permitted to use a reason to impose a greater term if that reason also is either: (1) the same as an enhancement that will be imposed; or (2) an element of the crime. (Cal. Rules of Court, rule 4.420(d); *People v. Clark* (1992) 12

4

Cal.App.4th 663, 666.)  A sentencing factor is an element of the offense if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor.  (See *People v. Garcia* (1989) 209 Cal.App.3d 790, 793-794.)

The court must put forth on the record the reasons for imposing the term selected, but the court may minimize or even entirely disregard mitigating factors without stating its reasons.  (§ 1170, subd. (b); *People v. Lai* (2006) 138 Cal.App.4th 1227, 1258; citing *People v. Salazar* (1983) 144 Cal.App.3d 799, 813.)  The trial court's sentencing decision under the amended sentencing scheme is reviewed for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

A

*Circumstances In Aggravation*

First, defendant argues the trial court was wrong to consider the manner of "planning, sophistication and professionalism" in the embezzlement as an aggravating circumstance because it is an element of the crime of embezzlement.  According to defendant, "the planning, sophistication and professionalism of every embezzlement is a given, *because* of the specific relationship of trust and the intent to defraud."  Defendant is mistaken.

" ' " 'The essential elements of embezzlement are the fiduciary relation arising where one intrusts property to another, and the fraudulent appropriation of the property by the latter.' " ' " (*Breceda v. Superior Court* (2013) 215 Cal.App.4th 934, 956.)  The California Rules of Court allow the trial court to consider in aggravation the manner in which the crime was carried out as it indicates planning, sophistication, or professionalism.  (Cal. Rules of Court, rule 4.421(a)(8).)

The elements of embezzlement do not require that a defendant have any level of sophistication, planning, or professionalism in his or her scheme.  (*Breceda v. Superior Court*, *supra*, 215 Cal.App.4th at p. 956).  That the city trusted defendant as a senior accountant technician and she took advantage of that relationship to embezzle over

5

$350,000 does not by statute require she did so with planning, sophistication, or professionalism. Because planning, sophistication, and professionalism are not elements of the crime, the trial court correctly considered the manner in which defendant embezzled money from her employer as an aggravating circumstance. (Cal. Rules of Court, rule 4.421(a)(8).)

Second, defendant argues the trial court was wrong to consider the "taking of a great value" as an aggravating circumstance because the court imposed a two-year enhancement for the same reason. (Cal. Rules of Court, rule 4.420(d); *People v. Wilks* (1978) 21 Cal.3d 460, 470.) Defendant ignores the fact that she embezzled from the city an amount exceeding the minimum required for enhancement.

The California Rules of Court provide that a taking or damage of great monetary value may be considered as a circumstance in aggravation. (Cal. Rules of Court, rule 4.421(a)(9).) Here, defendant embezzled $373,873.10 from her employer. As the People point out, this amount was far and above the minimum loss necessary to qualify for imposition of the enhancement.

Finally, defendant argues the trial court was wrong to consider the fact defendant "took advantage of a position of trust or confidence" as an aggravating circumstance because it was an element of the crime. Defendant argues "in order to embezzle from the City of Gridley, [defendant] had to have an intent to defraud her employer with whom she had a relation of trust and confidence." We read the record differently.

Where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence. (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562.) As to the city, that defendant took advantage of her position of trust or confidence is an element of the crime and thus cannot be considered in aggravation (*People v. Clark*, *supra*, 12 Cal.App.4th 663, 666); however, the trial court's review did not end with the financial harm to the city.

6

Here, the court noted defendant had access to all of the employees' accounts and passwords. The court specifically referenced Montero's victim statement during sentencing. Montero stated that defendant had used her name to embezzle approximately $58,000. Montero suffered "a lot of anguish over the violation of her trust and knowing that . . . defendant . . . had access to all of her financial and personal security information." Defendant's position of trust extended beyond her employment relationship with the city and included her coworkers whose personal information she was able to access. The trial court did not abuse its discretion in considering defendant's violation of trust with her coworkers as a circumstance in aggravation.

B

*Circumstances In Mitigation*

Defendant argues the trial court failed to address additional mitigating factors presented at sentencing and in moving papers. According to defendant, the trial court failed to consider restitution of a "substantial amount" -- $54,856.25 -- paid from her retirement fund, and her mental and physical health issues. We find no error.

The presumption from a silent record is that the trial court properly exercised its duties. (*In re Julian R*. (2009) 47 Cal.4th 487, 499.) Because the record is silent on defendant's "substantial amount" of restitution and mental and physical health issues, we presume the trial court properly exercised its duties. (*Ibid*.) Defendant has not overcome this presumption with evidence the trial court erred in disregarding these mitigating factors without stating its reasons. (*People v. Lai*, *supra*, 138 Cal.App.4th at p. 1258, citing *People v. Salazar*, *supra*, 144 Cal.App.3d at p. 813.) Here, the trial court noted as follows: "In mitigation, I do recognize that she has no prior criminal history and she did express remorse in her letter to the Court." The trial court considered these factors in mitigation and found "on balance, that the circumstances in aggravation outweigh[ed] the circumstances in mitigation." We find no error in the trial court's exercise of discretion.

7

## II

### *Section 654 Does Not Preclude Consecutive Sentences*
### *For Writing Bad Checks And Embezzlement*

Defendant contends her sentence for writing bad checks must be stayed pursuant to section 654 because the objective in writing the checks was the same objective for embezzling the funds from the city. Defendant argues in both instances she "sought enrichment from the City of Gridley and used her workplace authority and relationships to accomplish her objective." We find defendant's argument unpersuasive.

Section 654, subdivision (a) provides in relevant part as follows: "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (*People v. Atencio* (2012) 208 Cal.App.4th 1239, 1243.) At its simplest, section 654 precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Whether a course of criminal conduct is divisible depends on the intent and objective of the actor. (*People v. Jones*, *supra*, 103 Cal.App.4th at p. 1143.) A defendant's intent or objective must not be viewed too broadly or amorphously; specifically, to characterize a defendant's intent and objective as simply to steal money can be viewed as overbroad and amorphous. (*People v. Perez* (1979) 23 Cal.3d 545, 552 [finding "assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts" is overbroad and violates statute's purpose]; see *People v. Neder* (1971) 16 Cal.App.3d 846, 849-850, 854-855 [defendant properly separately punished for three forgery counts for using a stolen credit card to charge purchases in three different departments in the same store on the same day; the criminal objective should not be defined too broadly].) Further, a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. (*People v. Louie*

(2012) 203 Cal.App.4th 388, 399.)  This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.  (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

We review the court's determination of defendant's " 'separate intents' " for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence.  (*People v. Andra*, *supra*, 156 Cal.App.4th at pp. 640-641.)  The defendant's intent and objective are factual questions for the trial court.  (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)

Defendant's consecutive sentences are not precluded by section 654 because defendant showed " 'separate intents' " in her deceptive techniques and collaboration over three years to enrich herself from the city's coffers.  Although the objective was always financial enrichment from the city, this reading is too broad.  Defendant accessed and stored the names and personal information of numerous city employees for her enrichment.  After investigation, the city found 22 checks either fraudulently reissued or voided then later deposited into defendant's personal account.  That defendant accessed numerous coworkers' personal accounts and embezzled money with that information through fraudulent checks in 22 transactions supports the trial court's findings.  In addition, the period of three years invested reflects that defendant had the opportunity to reflect and to renew her intent before committing the next fraudulent transaction.


DISPOSITION

The judgment is affirmed.


9

                                                               _____ROBIE_____, J.

We concur:


_____NICHOLSON_____, Acting P. J.


_____MAURO_____, J.