Filed 1/16/25  P. v. Araujo CA5
Opinion following transfer from Supreme Court

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>MARTIN PARRA ARAUJO,<br><br>　　Defendant and Appellant. | F084058<br><br>(Super. Ct. No. BF181629A)<br><br>**OPINION** |

### <u>THE COURT</u>[*]

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Amanda D. Cary, Louis M. Vasquez, Lewis A. Martinez, and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] 　　Before Detjen, Acting P. J., Franson, J. and Snauffer, J.

Defendant Martin Parra Araujo (defendant) was convicted by a jury of one count of attempted murder and one count of infliction of corporal injury on a fellow parent. The jury also found true two enhancements, that defendant had personally used a deadly weapon and had personally inflicted great bodily injury (GBI) in circumstances involving domestic violence. The trial court sentenced defendant to a total term of seven years to life plus six years. In the first iteration of this appeal, we held in relevant part that the trial court did not err in its application of Penal Code sections 1170 and 1170.1.[1] (*People v. Araujo* (Sept. 29, 2023, F084058) [nonpub. opn.].) The Supreme Court subsequently ordered us to vacate our opinion and reconsider defendant's appeal in light of the recent decision in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*). We have vacated the prior opinion and received all supplemental briefing. We now reverse.

## PROCEDURAL BACKGROUND

On December 7, 2020, the Kern County District Attorney filed an information charging defendant with: attempted murder (§§ 664, 187, subd. (a); count 1); inflicting corporal injury resulting in a traumatic condition upon the mother of the offender's children (§ 273.5, subd. (a); count 2); and child endangerment (§ 273a, subd. (a); count 3). For count 1, the information alleged that defendant acted willfully, deliberately, and with premeditation (§ 189). For all counts, the information alleged enhancements for personally inflicting GBI in circumstances involving domestic violence (§ 12022.7, subd. (e)) and personally using a deadly or dangerous weapon, to wit a knife (§ 12022, subd. (b)(1)).

On January 27, 2022, a jury found defendant guilty on counts 1 and 2. With respect to count 1, the jury found true the allegation that defendant acted with deliberation and premeditation. For counts 1 and 2, the jury found true the enhancements that defendant personally inflicted GBI in circumstances involving domestic violence and

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

personally used a deadly or dangerous weapon. The jury was unable to reach a verdict with respect to count 3.

On March 14, 2022, the trial court sentenced defendant on count 1 to a total term of seven years to life, plus a determinate term of six years (one year for the personal use of a deadly or dangerous weapon enhancement and the five-year upper term for the GBI enhancement). The court sentenced defendant to a total of 10 years on count 2 (the four-year upper term for infliction of corporal injury, the one-year personal use of deadly or dangerous weapon enhancement, and the five-year upper term for the GBI enhancement). The sentence on count 2 was stayed pursuant to section 654. Count 3 was dismissed on motion by the People.

On March 16, 2022, defendant appealed and challenged his sentence.

On September 29, 2023, we affirmed the defendant's sentence.

On December 12, 2024, the Supreme Court vacated our opinion and transferred the matter back to us for reconsideration in light of *People v. Lynch*.

On December 16, 2024, we vacated our prior opinion and ordered the parties to submit supplement briefing in light of the Supreme Court's order for reconsideration.

On January 13, 2025, the parties completed their supplemental briefing.

**FACTUAL BACKGROUND**

Defendant and A.S. lived together, had been dating for over 20 years, and had four children together. Defendant and A.S. were having difficulties in their relationship. Defendant could not work due to medical conditions, and A.S. worked as an agricultural laborer. Defendant would get jealous that male coworkers would give A.S. a ride to the fields. On one occasion, in May 2020, defendant threatened A.S. with a knife not to accept a ride to work. After this incident, defendant agreed to leave the house, but he never moved out.

On the night of June 28, 2020, defendant, A.S., their adult daughter M.S., and their minor daughter J.S. were at home. A.S. and defendant had not talked the entire day, and

3.

the prior day defendant had asked A.S. to forgive him for the May 2020 incident. Defendant was lying on the sofa in the living room; A.S. was watching mass on her cell phone in the living room in front of the sofa; M.S. was in the kitchen; and J.S. was in the shower. Defendant asked M.S. to get his glucose monitor for him. After M.S. left to get the device, defendant got up, grabbed A.S. by the hair, pulled her backwards, and put a pocketknife to her throat. A.S. yelled, "[N]o!" Defendant released A.S., but then grabbed her right hand and began cutting one of A.S.'s fingers. A.S. ran into the bathroom where J.S. was taking a shower, and defendant chased after her. Defendant went into the bathroom and began stabbing A.S. M.S. called 911. Defendant stabbed A.S. seven times, including in her legs, abdomen, and heart. Defendant was calm while he was stabbing A.S. A.S. was asking defendant why he was doing this, and defendant replied because of all the times that A.S. had "betrayed" him. J.S. got out of the shower and tried to pull defendant away from A.S. J.S. got a cut on her arm while pushing defendant away from A.S. The cut on J.S.'s arm was "small," and she did not require medical attention. J.S. did not think that defendant was trying to harm her because he was only focused on A.S. M.S. pulled J.S. away and put her in a bedroom and then pulled defendant away from A.S. M.S. closed the bathroom door. M.S. and defendant were outside the bathroom, and defendant unsuccessfully attempted to reenter the bathroom. Defendant eventually started walking towards the living room. Defendant said, apparently to A.S. through the closed door, "I told you this was going to happen. This is all your fault." Defendant then cut himself in the throat and collapsed. The police and paramedics arrived shortly thereafter. A.S. was taken to the hospital, underwent surgeries for her wounds, and was eventually discharged on July 5, 2020.

## SENTENCING

On February 28, 2022, the People filed a sentencing brief in which it discussed recent legislative changes to sections 1170 and 1170.1 but did not discuss the recent changes to section 1135. The People's brief argued that the jury necessarily found

4.

aggravated circumstances based on the nature of the conviction. Specifically, the People argued that the aggravating circumstances found in the Rules of Court, rules 4.421(a)(1), (a)(2), and (a)(8) applied.

On March 14, 2022, the trial court held a sentencing hearing. Defense counsel submitted the matter without comment, which we take as defense counsel accepting and supporting the recommendations of the probation report. The probation report had recommended the lower term sentences for the GBI enhancements and the corporal injury offense. Y.S. (a third daughter of defendant and A.S.), M.S., and A.S. then gave statements. After noting that it had considered the People's sentencing brief and stating that it had "thought long and hard about the appropriate sentence … considering the new sentencing guidelines," the court explained its sentencing rationale as follows:

> "The appropriate sentence in this case is one that considers the totality of the circumstances involved throughout the course of this conduct, and in circumstances in mitigation, the Court agrees with the probation department that the defendant has no prior record of criminal conduct, which is a mitigating circumstance that must be considered heavily.
>
> In considering the circumstances in aggravation, the Court is going to find, even though Probation did not indicate any, that the crime in this case, specifically related to Count 1, did involve great violence, with a high degree of cruelty.
>
> For those reasons, the Court has considered what is necessary for a conviction involving attempted murder and recognizes that the conduct attributable to the defendant went well above and beyond what would otherwise be established for purposes of a conviction, and on that basis and on balance, considering all of the defendant's conduct relating to Count 1 and Count 2, the Court is going to find that the upper term is appropriate where applicable in considering determinate sentencing schemes."

Defense counsel did not object to the sentence imposed.

DISCUSSION

## I. Aggravating Factors

### A. *Parties' Arguments*

Defendant argues the court imposed upper term sentences for count 2 and the GBI enhancements based on one aggravated factor concededly found by the jury, i.e., the defendant acted with "great violence" because he personally inflicted GBI, and one aggravating factor that was not found by the jury, i.e., the crime involved a "high degree of cruelty." Relying on *Lynch*, Defendant argues that because it cannot be determined whether a jury would have found "a high degree of cruelty" beyond a reasonable doubt, the sentence must be vacated, and the case remanded for a full resentencing.

The People respond that defendant forfeited this claim because defense counsel made no objections at sentencing.[2] Alternatively, the People argue that any error was harmless. Relying on *Lynch*, the People argue in part that the jury would have found beyond a reasonable doubt that defendant's crimes were committed with a high degree of cruelty based on defendant's actions and the circumstances of the crime.

### B. *Legal Standards*

Effective January 1, 2022, and pursuant to section 1170, "when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if a jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction." (*People v. Jones* (2022) 79 Cal.App.5th 37, 44; see § 1170,

---

[2] "[A]n appellate court is generally not prohibited from reaching questions that have not been preserved for review by a party." (*People v. Smith* (2003) 31 Cal.4th 1207, 1215.) Assuming that the People's forfeiture argument is correct, we choose to exercise our discretion and will address the merits of defendant's argument. (*People v. Williams* (1998) 17 Cal.4th 148, 161 fn. 6; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 520; *People v. Bradford* (2007) 154 Cal.App.4th 1390, 1411.)

subd. (b).) "Section 1170.1 likewise now provides that the court may impose the upper term for an enhancement 'only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' " (*People v. Butler* (2023) 89 Cal.App.5th 953, 958, disapproved on another ground by *Lynch*, *supra*, 16 Cal.5th at pp. 768–769; § 1170.1, subd. (d)(2).) "[U]nder the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281; *Lynch*, *supra*, 16 Cal.5th at p. 742.) Under the current versions of sections 1170 and 1170.1, "a Sixth Amendment violation occurs when a trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, at p. 768.) The Sixth Amendment violation is considered prejudicial, and a remand for resentencing will be required, "unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with current statutory requirements." (*Ibid.*) In other words, harm is assessed under the *Chapman* standard. (*Id*. at pp. 756, 768.)

It has been recognized that, to the extent an aggravating factor " ' "rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." ' " (*Lynch*, *supra*, 16 Cal.5th at p. 775; see *People v. Sandoval* (2007) 41 Cal.4th 825, 840 (*Sandoval*); *People v. Ross* (2022) 86 Cal.App.5th 1346, 1355 (*Ross*), review granted Mar. 15, 2023,

S278266, and disapproved on another ground by *Lynch*, at p. 769; *People v. Wandrey* (2022) 80 Cal.App.5th 962, 983, review granted Sept. 28, 2022, S275942.)

### C.    *Analysis*

The trial court justified imposition of the upper term for the GBI enhancements and the corporal injury offense because the crimes involved "great violence, with a high degree of cruelty."[3]  This is an invocation of Rules of Court, rule 4.421(a)(1), which reads:  "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."  (Cal. Rules of Court, rule 4.421(a)(1).)  There is no dispute that the jury was not expressly asked to find either of these rule 4.421(a)(1) factors true beyond a reasonable doubt.

Defendant concedes, both in his opening brief and his reply, that the jury necessarily found or would have found that he committed attempted murder with "great violence" because it found the GBI enhancement to be true.[4]  The uncontradicted (and in many respects corroborated) trial testimony of A.S. demonstrated that defendant placed a knife to A.S.'s throat, grabbed her hand and began cutting her finger, pursued A.S. with the knife as she fled, stabbed her seven times throughout her body (including in her heart), and only stopped because of the physical intervention of M.S. and J.S.  Despite the somewhat vague and subjective nature of the "great violence" aggravating factor,

---

[3] The parties view the trial court as relying on "great violence" and "a high degree of cruelty" as two independent considerations, even though they are both found under Rules of Court, rule 4.421(a)(1).  That is, the parties view the court as essentially citing rule 4.421(a)(1) twice.  We cannot say that the parties' interpretation of the record is unreasonable.  "[T]he use of the disjunctive 'or' makes clear that the rule may be satisfied by cruel, vicious or callous acts other than those involving great violence, great bodily harm, or threat of great bodily harm."  (*People v. Duran* (1982) 130 Cal.App.3d 987, 990.)  Therefore, we will also view the court's statement as identifying two separate factors under rule 4.421(a)(1).

[4] Defendant's supplemental brief following transfer is consistent with his opening and reply briefs.

8.

(*Sandoval*, *supra*, 41 Cal.4th at p. 840; *Ross*, *supra*, 86 Cal.App.5th at p. 1355), given the jury's true finding on the GBI enhancement, A.S.'s testimony, and defendant's express concession, we conclude beyond a reasonable doubt that the jury would have found beyond a reasonable doubt that count 1 was committed with "great violence" for purposes of Rules of Court, rule 4.421(a)(1).

As for the "high degree of cruelty" factor, this is another factor that is recognized as being a "somewhat vague or subjective" aggravating factor that involves an "imprecise quantitative or comparative evaluation of the facts," and that often proves difficult to assess under the *Chapman* standard. (*Lynch*, *supra*, 16 Cal.5th at p. 776; *Ross*, *supra*, 86 Cal.App.5th at p. 1355.) Unlike the "great violence" factor, defendant does not concede that the "high degree of cruelty" factor is adequately supported. Without the benefit of a concession, the People contend that defendant's actions demonstrated a "high degree of cruelty" because he repeatedly stabbed A.S. in multiple parts of her body despite the presence of his daughters and their attempts to stop him, he cut J.S., and he attempted to cut his own throat in his family's presence.

We agree with the People that defendant's attempted murder of A.S. involves cruelty. However, we are not convinced that the facts identified by the People show a "*high degree* of cruelty" beyond a reasonable doubt. First, although the record shows that defendant attempted to kill A.S. with his pocketknife while chasing and repeatedly stabbing her, those facts are accounted for by the "great violence" factor. Moreover, defendant's attack on A.S. could reasonably be viewed as reflecting defendant's determination to complete the murder as opposed to reflecting a "high degree of cruelty." Second, the fact that defendant cut his throat is a physical act against himself that occurred after his attempt to kill A.S. had ceased. The act does nothing to further the attempted murder of A.S. Further, defendant cut his throat while A.S. was inside the bathroom behind a closed door and his back was turned to M.S. As such, the act appears to be more suicidal than an attempt to inflict mental anguish against A.S. or M.S. Third,

while it is true that J.S. was cut by defendant's pocketknife, the wound was "small," and J.S. did not believe that defendant was attempting to hurt her. J.S.'s wound appears to have been an unintentional consequence of her physically intervening to stop defendant from attacking A.S. The unintentional wounding of a third party does not further the attempted murder of A.S. Finally, the fact that defendant's daughters were in the house at the time of the attempted murder does not necessarily reflect a "high degree of cruelty." The presence of third parties is not a part of an attempted murder, and the daughter's presence was not utilized by defendant in any way. In fact, the daughters were in different rooms and were engaged in different activities when defendant began his attack. J.S. was showering, and defendant had sent M.S. to get his glucose monitor from a different room. This suggests that defendant did not intend for the daughters to see anything or be present during the attack.

We do not minimize defendant's actions during the attempted murder of A.S. As stated above, defendant's attempted murder of A.S. contains elements of cruelty. Nevertheless, given the state of the record as described above and the nature of the "high degree of cruelty" factor (*Lynch*, *supra*, 16 Cal.5th at pp. 775–776; *Ross*, *supra*, 86 Cal.App.5th at p. 1355; see also *Sandoval*, *supra*, 41 Cal.4th at p. 840), we cannot conclude beyond a reasonable doubt that a reasonable jury would conclude that defendant committed crimes against A.S. with a "high degree of cruelty." (*Lynch*, *supra*, 16 Cal.5th at p. 775; *People v. Wandrey*, *supra*, 80 Cal.App.5th at p. 983 [finding error under the *Chapman* standard with respect to the "particularly vulnerable victim" aggravating factor because "[s]ome degree of speculation would necessarily be required for us to conclude that the jury would have agree with the trial court's evaluation …."].) Therefore, we must vacate defendant's sentence and remand the matter to the trial court for a full resentencing.[5] (*Lynch*, at p. 768; *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

---

[5] Defendant also argues that the trial court erroneously failed to consider section 1385, subdivision (c) and failed to follow *People v. Walker* (2024) 16 Cal.5th

## II. Unauthorized Sentence and Ineffective Assistance of Counsel

We read defendant's arguments regarding an unauthorized sentence and ineffective assistance of counsel as arguments made in the event that we find forfeiture. (E.g. *People v. Anderson* (2020) 9 Cal.5th 946, 962 ["The unauthorized sentence doctrine is designed to provide relief from forfeiture for 'obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings.' It applies when the trial court has imposed a sentence that 'could not be lawfully imposed under any circumstances in the particular case.' "].) Since we are not enforcing the forfeiture doctrine in this case, we need not address defendant's argument.

## DISPOSITION

Defendant's sentence is vacated. This matter is remanded to the Kern County Superior Court for resentencing consistent with the analysis of this opinion.[6]

---

1024. Because *Walker* was decided two years after defendant was sentenced, and because we are vacating defendant's full sentence, defendant may move at resentencing to dismiss the enhancements under section 1385, subdivision (c) in light of *Walker*. We express no opinion as to the result of a such a motion at resentencing.

[6] Defendant's opening brief states that after defendant was sentenced, the trial court did not permit him to present mitigation evidence/testimony in response to the statements of A.S., M.S., J.S., and Y.S. Although defendant does not ascribe error to the trial court in this regard, he argues that he must be permitted to address the court if he makes a timely request at resentencing pursuant to *People v. Evans* (2008) 44 Cal.4th 590. The People agree with defendant. Considering the parties' agreement, we are certain the trial court will follow all applicable procedures during the resentencing.

11.